Filed 11/8/23  In re C.E. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# COURT OF APPEAL, FOURTH APPELLATE DISTRICT

# DIVISION ONE

# STATE OF CALIFORNIA

| | |
|---|---|
| In re C.E., a Person Coming Under the Juvenile Court Law. | |
| | D082302 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| | (Super. Ct. No. CJ1314B) |
| Plaintiff and Respondent, | |
| v. | |
| V.D., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Michael P. Pulos, Judge.  Affirmed.

Lelah S. Fisher, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Eliza Molk, Deputy County Counsel, for Plaintiff and Respondent.

Mother[1] appeals the June 8, 2023 jurisdiction and dispositional orders. In the orders, the juvenile court found that her child was not an Indian child within the meaning of the Indian Child Welfare Act (ICWA), title 25 U.S.C. section 1901 et seq. Her sole contention is that the San Diego County Health and Human Services Agency (Agency) failed adequately to inquire into C.E.'s Native American ancestry as required by ICWA (25 U.S.C. § 1901 et seq.) and Welfare and Institutions Code[2] section 224.2. We disagree and affirm.

I.

BACKGROUND

Given the sole issue on appeal, a detailed factual background is not necessary. Mother had sole custody of C.E. C.E. ran away from Mother in April or May 2022. Mother reported C.E. missing on September 11, 2022. On or about November 1, 2022, police detained C.E. Mother refused to pick him up when he was detained. In November 2022, the Agency filed a petition on behalf of then 16-year-old C.E. under section 300, subdivision (b). Mother was an "absent caregiver" and was "unwilling and unable to provide care" for C.E., or limit his dangerous behaviors, including substance use. C.E. has a history of running away from Mother. At the detention hearing on November 7, 2022, the juvenile court sustained the allegations of the petition and detained C.E. The court directed the Agency to investigate "whether [C.E.] is an Indian child."

Mother and Father denied ICWA ancestry. C.E. denied ICWA ancestry and explained that his half-brother may have ICWA ancestry on his father's side; the brothers do not share a father and the half-brother was never a

---

[1]     Father is not a party to this appeal.

[2]     All subsequent statutory references are to the Welfare and Institutions Code unless otherwise specified.

2

guardian for C.E.  Mother completed the Parental Notification of Indian Status form, ICWA-020, and denied any "Indian Status."  The court ordered both parents to disclose to the Agency the "names, residences, and any known identifying information of any maternal or paternal relatives of the child."  The Agency interviewed numerous other relatives to inquire into C.E.'s ICWA ancestry.

Mother was adopted for a period of six years.  Her adoptive mother does not believe C.E. has ICWA ancestry through Mother, and lost track of Mother's aunt and uncle.  Mother's temporary adoptive mother denied ICWA ancestry; she remembered Mother's biological mother participated in a program offered by Native Americans in some way, she did not believe Mother's biological mother was native.  When asked for identifying information regarding her mother, Mother declined to provide any.  She states her mother was " 'drunk all the time and she had no teeth' " and that Mother did not know if she was still alive.

In the jurisdiction/disposition report filed November 18, 2022, the Agency detailed their ICWA inquiries to various members of C.E.'s family.  Nothing the Agency uncovered during their inquiry gave reason to believe C.E. is or may be an Indian child.  On June 8, 2023, the court found, without prejudice, that ICWA does not apply.

## II.

## DISCUSSION

Mother contends the Agency failed to discharge its inquiry obligations under ICWA.  She complains the Agency's initial inquiry was deficient because the Agency did not renew requests for information about her mother and/or maternal grandmother.  Mother further claims the Agency's inquiry was deficient because they did not reach out again to her temporary adoptive

mother to ask for contact information for her mother. We disagree. As detailed below, the Agency made reasonable and good faith efforts to inquire into C.E.'s possible Native American ancestry and uncovered no viable leads that would justify any further inquiry.

We begin by setting out the Agency's inquiry obligations under ICWA and the state implementing statute. Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families. (*In re Isaiah W.* (2016) 1 Cal.5th 1,7.) Congress gave tribes the "right to intervene in or exercise jurisdiction over a dependency proceeding involving the Indian child."[3] (*In re I.F.* (2022) 77 Cal.App.5th 152, 160.) To enable this right, California law charges the juvenile court and Agency with an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a); see *In re Isaiah W.*, at p. 9; *In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.) The Agency's duty to make an initial inquiry into the child's possible Indian ancestry extends to "extended family members," which includes at least the maternal grandmother (§ 224.2, subd. (b).) An agency is only obligated to make "a good faith effort to gather information about the children's membership status or eligibility." (*In re D.F.* (2020) 55 Cal.App.5th 558, 570.) An agency need not " 'cast about' for information or pursue unproductive investigative leads." (*In re D.S.*, at p. 1053.)

---

3    An " 'Indian child' " is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see § 224.1, subd. (a) [adopting federal definition].)

As to the initial inquiry, Mother faults the Agency for "failing to ask for names of Mother's biological family members in order to attempt to inquire of them regarding her possible Indian ancestry." The court has repeatedly ordered Mother to disclose names or other identifying information of maternal relatives, to include her biological mother and grandmother. Further, when the Agency specifically asked Mother for her mother's name, Mother neither provided it nor any other identifying information. Mother contends the court "did not order the Agency to ask Mother and [adopted maternal grandmother] for the biological relatives' names, as it should have done," but fails to address that the court *has* ordered Mother to disclose that exact information or that the Agency *has* asked Mother for information about her biological mother.

Mother "has not demonstrated there was a viable lead that would require [the Agency] 'to make a meaningful effort to locate and interview [additional maternal relatives] to obtain whatever information they may have as to the child's possible Indian status.' " (*In re A.M.* (2020) 47 Cal.App.5th 303, 323). We distinguish this case from the case Mother cites in which the appellate court determined the child welfare agency's initial ICWA inquiry was inadequate. In *In re Y.W.* (2021) 70 Cal.App.5th 542, 522-553, the social worker did not follow up on a viable lead from the adoptive mother; the adoptive mother offered the biological father's name and offered to connect the agency to a maternal aunt. Unlike *In re Y.W.*, where the mother did not know information about her biological parents and the agency had to rely upon the adoptive family's knowledge, Mother knows identifying information for her mother and has not shared it with either the Agency or the court.

Finally, Mother contends the Agency's purported failure to adequately inquire into C.E.'s Native American ancestry was prejudicial. We need not

address the issue of prejudice, however, because "Mother has not demonstrated error, and reversal is not warranted under the circumstances of this case." (*In re A.M., supra*, 47 Cal.App.5th at p. 323.)

## DISPOSITION

The juvenile court's order is affirmed.

<br>

HUFFMAN, Acting P. J.

WE CONCUR:

<br>

BUCHANAN, J.

<br>

RUBIN, J.